Good morning, Your Honors. Thank you. May it please the Court. My name is Michelle Brockman. I am an attorney with Moulton Bellingham in Billings, Montana, representing the appellant in this case, Aspenway Enterprises, which is a small Montana business that owns and operates several errands, sales, and leasing franchise locations. Also present with me today is my co-counsel, Adam Warren, in the courtroom as well. We are here in front of the Court on an appeal from the District Court's decision that insurance coverage does not apply for Aspenway related to policies purchased from various insurers. I'll refer during my argument today to those insurers as the Liberty Mutual Group of insurers. Those are the ones that fall under American in general names, and the Hartford. My client purchased insurance policies that were both primary and umbrella policies with these carriers from 2009 forward. Two pieces of litigation, unfortunately, arose under which we believe coverage was triggered and the District Court improperly found that coverage did not apply. One of those is a multimillion-dollar class action lawsuit in Pennsylvania, which asserts ECPA claims as well as originally asserted several common law claims. That case is still pending in front of the Pennsylvania Federal District Court. The second case is a Washington State Attorney General case. That case asserted several claims related to consumer protection issues. That case was settled by way of an indemnity payment from Liberty Mutual. Hartford's insurance coverage was not triggered in that case, as well as a consent decree that my client entered into. There are a number of grounds that are pending on appeal before this Court with regard to the insurance coverage questions, but I'd like to cover three specifically today in addition to any questions the Court may have. The first is that the District Court improperly erred when it found that insurance coverage does not exist for the Washington action. Second, we believe that the District Court erred when it found that continued defense of the Pennsylvania action does not exist beyond the dismissal of a right of privacy claim. Third, we believe the District Court erred when it found that the insurers were entitled to reimbursement of an indemnity payment made for the Washington action, as well as recoupment of defense costs. If the policy in the Washington action was not in effect at the time of the conduct sued upon, how then is their coverage? Good question, Your Honor. It was not in effect for the Hartford, but it was in effect for Liberty Mutual, for that group of insurers, and Liberty Mutual does not dispute that, that coverage was triggered during that time period. The decision that the District Court made in the Washington action relates specifically to an endorsement that has an issue in this case, the personal and advertising injury endorsement, and that's the only issue that the District Court considered, and it's our submission that the Court erred in finding that coverage was not triggered under that particular endorsement. Specifically, the District Court's decision was in error when it found that the publication element of that endorsement was not triggered by, in order to ---- In the complaint that was filed by the State of Washington against Aspen Way? Yes. What, you know, I looked at this complaint again this morning just to refresh my recollection of it. Which paragraph or allegations do you contend should have put them on notice regarding publication? Absolutely, Your Honor. Do you have the complaint there? I do have the complaint. All right. Get the complaint, and I want you to show me what specific allegations they should have said, ah, this covers publication and we owe a defense. Absolutely. The Court specifically found that publication, the definition of publication includes disclosure, and I'm going to point specifically to count four in the Washington action. Okay. Hold on, hold on. Let me get, let me just. Okay. Fourth cause of action, unfair collection and disclosure of private and confidential information. Yes. Okay. Count four specifically alleges disclosure of information which falls within the definition of publication. What the district court found, which is in clear error, is that there is no allegation of disclosure in the complaint. Well, but fair, let's be fair to the district court, though. If you read all of paragraph 8.2, subsections A, B, and C, it talks about collection. It does, but it also alleges disclosure, Your Honor. But who does it, who are they disclosing it to? The disclosure, I believe, is not specified in that count, but there is an allegation of disclosure. So you're saying that defendant unfairly collected and disclosed, quote? That is specifically what the. Private and confidential information. Could it be that, are you suggesting that this should be interpreted to mean that disclosure was to officers and employees of Aspenway? Well, we know that to be the case in the action. Right. When discovery was conducted later in the action, that's exactly what the specific allegations were that the State made. Now, I recognize that the discovery is not in the record, because unfortunately, what this case highlights is the prematurity of a declaratory ruling in a case like this. The court wasn't in a position to consider the discovery at that time, because we were not at that point. But the complaint. Was that raised in the lower court? It was not raised at the lower court. And again, the reason for that is exactly what I'm, what I believe this case highlights as an issue, that when a deck action is filed as to litigation where there are a number of pending factual issues, it is virtually impossible to make a determination about whether or not coverage can, in fact, be found clearly and unequivocally not to exist when there are these types of moving parts. Well, go ahead. Finish. The notice pleading, which is all that's required for a complaint, specifically uses the words disclosure. How that's developed in the course of litigation certainly could impact coverage questions. We don't dispute that, but that's not what occurred here. If the district court was not put on alert that you needed, for instance, to have further discovery on this point. That is correct, Your Honor. How is that error on the district court? Where the error lies with the district court is that the district court ignored the exact verbiage used in the complaint, which opens up that issue. A complaint certainly is not meant to contemplate every factual issue that's going to be developed. All a complaint is meant to do is notify the responding party about what the claim is, and that claim specifically is related to disclosure. Did you seek leave to amend? Pardon me? Did you seek leave to amend the complaint to address the district court's concern? We did not. And specifically because we believe that the district court's decision is just in clear error, that the district court ignored the specific language in the Washington action pled by the Attorney General. I have one other question for you. So if you go to count four. I'm sorry, Your Honor. I'm trying to find the... Count four, paragraph 8.1. It says plaintiffs re-alleges paragraphs 2.1 through 7.5, which are the factual allegations in that complaint. And again, those all talk about collection. Specifically, I think as to count four, Your Honor, discussing the disclosure issue, the complaint does discuss disclosure. Now, the Attorney General didn't discuss in detail in the complaint the extent of that disclosure. Well, but, you know, you read those allegations, it talks about, you know, what they were doing, the rental software, whatever that program was called, how it worked and how they didn't inform the renters. And they just lay it all out. A determination... And then they allege the, you know, misrepresentation. They allege violation of the State Deceptive Collection Act or whatever that's called, Computer Spyware Act. And they allege, again, another Computer Spyware Act claim. A determination, Your Honor, if I might respectfully suggest. A determination we know with regard to coverage has to be unequivocal. Unequivocal, we know that. Black's Law Dictionary defines that as absolute, without question. If the court is entitled in a declaratory judgment action to pick and choose what words it wants to consider in whether or not coverage exists, where is the line drawn? The court clearly ignored specific words that triggered coverage in this case, disclosure. And that is enough to create an ambiguity, to make it not unequivocal that coverage exists. If, in fact, the facts as developed later on show that there is no merit for that claim, then perhaps a coverage determination could have been revisited. But based upon the allegations of the complaint, coverage is triggered. The exact verbiage upon which the court declines to find coverage existed are present in the complaint. Now, there was a defense given in both actions. There is, Your Honor. On the reservation of rights. Yes. I know in one point there was an objection three years made after the acceptance of that reservation. But predominating that, isn't this all about the exclusions? And to some extent in the Byrd action, the reformation that, you know, I guess made the exclusion complete. Sure. Isn't this really about exclusion, the interpretation of the exclusion language in those policies? And to what extent, then, if that exclusion applies, then they could seek this reimbursement that the district court gave them? Let me address that, then, if I might, Your Honor. That highlights two issues which are on appeal in front of this Court. First, the issue of whether or not the exclusion applies. And if it does, is the continued duty to defend still in place? And then, if the exclusion applies, do the insurers have the right to reimbursement? And I'd like to address both of those with consideration of the time, obviously, that I have here. First, I want to talk specifically about the issue of whether or not the continued duty to defend exists after the finding by the Court that the exclusion applied to the ECPA claim and the right of privacy claim was, in fact, dismissed. We know that Montana follows a mixed action rule. And the Court, in finding that the continued duty to defend did not exist here, specifically relied upon one Montana case, which is very different than the case in front of this Court now. Wasn't there, I believe, another case, an Ohio case? No. As to the recoupment issue, the Court relied upon cases outside of Montana as well. But as to the question of whether the continued duty to defend continues beyond dismissal of a covered claim, the Court relied upon the Bozeman v. AIU case. Essentially, what the Court said is that there is this bright-line rule in Montana that purports to exist, which says that when a covered claim is dismissed from an action, the continued duty to defend does not exist. The Bozeman case is very distinguishable from the case that we have present here. That case involved a final jury verdict. And the parties in that case chose not to appeal the final jury verdict as to the covered claim. That's remarkably different than what we have here. I submit to the Court that we do not in any respect have an unequivocal demonstration of a lack of coverage. First, the Pennsylvania action, the covered claim in that case... Is that the Byrd case? The Byrd case. The right of privacy claim was dismissed pursuant to a motion to dismiss filed early on. It is not subject to a Rule 54 certification as a final judgment. An interlocutory appeal has not been taken from that, nor could it be taken. Importantly, the facts of that dismissal required the Pennsylvania Court to interpret Wyoming law regarding that covered claim, the right of privacy claim. That issue is presently also before the Wyoming Supreme Court. The very firm that has filed the Byrd litigation has also filed an action in Wyoming to ask the Wyoming Supreme Court to find that a right of privacy does in fact exist. Did the plaintiffs in Byrd ever appeal the dismissal of counts one through four? They have not. I'm not in the plaintiff's counsel's head, obviously, of why that dismissal did not occur. So those claims no longer exist? I would dispute that, Your Honor. From the standpoint of whether they exist for insurance coverage is a different issue than whether they exist with regard to what will go to trial in front of a jury. And I would submit that there are multiple factual scenarios that could occur here that could in fact make coverage again apply for those right of privacy claims. One, we know that as to a motion to dismiss, at some point an appeal can and very likely will be taken. It's not appropriate for an interlocutory appeal because there is no final judgment. What you're saying is the ECP claim is still pending in Pennsylvania? It is. The federal district court? Yes. And they haven't settled it? No. It's ongoing? Yes. In fact, the question of class certification has not even been decided in that litigation. I'll note in one of the briefs I read that the district court denied class certification. It went to the circuit and the circuit reversed. It did. And sent it back down. And some discovery has been conducted on the issue of class certification over the course of the last year and a half. The bulk of the defense of the case, which is also what I believe the court was misled about in relationship to the reservation of rights and objections made, the bulk of the defense of the Byrd litigation has not focused upon the merits of that case. It's deceiving how long that case has been going on for. The bulk of the litigation has focused upon class certification. So there's some other case, not the Byrd case, that's pending in Wyoming where this issue about the right to privacy is being litigated up through the Wyoming court system. Yes. That case right now is subject to the Wyoming Supreme Court took a discretionary writ in order to consider the question of whether or not the right of privacy does exist as a separate cause of action in Wyoming. What I believe these issues highlight is the risk that exists that in fact this covered claim will be revived in the Pennsylvania litigation. Counsel, I don't mean to interrupt you, but you're more than a minute over your time. And I thought you might want to do a rebuttal, which you haven't saved any time for. I'm going to give you two minutes for rebuttal, but I think you need to conclude now. Thank you, Your Honor. I appreciate that. And I will address any other issues on rebuttal if this court will allow me to. All right. We'll give you two minutes extra time. Thank you, Your Honor. If the appellees need two minutes more on their clock, they can have it, too. Thank you, Your Honor. And good morning. May it please the Court. I am Jonathan Fryman for the Hartford. I'm going to be dividing — we are going to be dividing our time. I'll divide it along with Mr. Sitzer to my right. I represent the Hartford. He represents the Liberty Mutual Companies. Also, so that we don't burden the Court with repetition, we've chosen to divide the issues. So I'll be addressing the applicability of the exclusion, both to the ECPA claim and to the common law claims, as well as the City of Bozeman issue of the right to withdraw when there are no longer any covered claims in the case. He will be addressing the question of reimbursement, as well as the issues that are specific to Liberty Mutual, which includes the Washington action. Your Honors, the Court should affirm the District Court's conclusion that the recording and distribution exclusion precludes coverage  and it should also find that the common law causes of action likewise fell within the ambit of the exclusion so that there never were any covered claims in the suit. If this Court were to conclude that the common law claims were not within the ambit of the exclusion, it would then need to address the City of Bozeman issue, as the District Court did, in order to determine whether there was a right to withdraw when there were no covered claims left in the suit. We believe this Court should affirm on that basis if it needs to reach that question. The applicability of the exclusion to the ECPA is obvious from its plain language, and every court to have addressed the question of whether similar exclusions apply to the ECPA or similar statutes like the TCPA have found that, yes, the exclusions do apply and have found that those are not covered claims. So the real question is really what did we do with this common law claim of right of privacy? Sure. If Your Honor wants to skip any further discussion of the applicability to the ECPA claim, yes, the common law claims have also been addressed by a number of courts, including the Tenth Circuit in the MCASCO case, the First Circuit in the One Beacon case, and in a somewhat different manner by this circuit in the Big Five sporting goods case. So what's your argument? I just want to make sure I understand your brief. So the exclusion has this language about directly arising. What is it? Directly arising? Is that the language? Yeah. The exact language, Your Honor, and you can find it on page 73 of the excerpts of record, are personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate. Your argument is that the reason why the exclusion covers the privacy claim is because that claim arises directly out of? Out of any action or omission that violates the ECPA or is alleged to violate the ECPA. That's right. So the question is not here does it arise directly or indirectly out of the ECPA, any action or omission that itself violates or is alleged to violate the ECPA. So here what you have is the exact same set of facts, right, the installation of the software on the computer so that they can spy through them. That set of facts precisely supports the ECPA claim and the invasion of privacy claim. There's no different factual allegations between the two. So we know that this is just, is just another way of saying the ECPA thing and that both of them are in fact, both of them arise directly out of any action that is alleged to violate the ECPA. The action that's alleged to violate the ECPA is spying through the cameras. That's, and the collection of the information, of course, and the transmission  of the information. That's what's alleged to violate the ECPA. And so it doesn't matter what you call it. It doesn't matter how you dress up those facts. You can call them an ECPA violation. You can call them an invasion of privacy claim. You can call them whatever you want. They still fall within the plain language of the exclusion. And that's the conclusion that MCASCO came to and that OneBeacon came to. So simply by the addition of the phrase or indirectly made it no longer ambiguous? Well, no longer ambiguous, Your Honor. No, there are a number of things that make it no longer ambiguous. One of them is that. One of them is that the language is clearly broader than the arising out of. But this notion that somehow the language arising out of in the exclusion, Judge LaMelle, the notion that that language is somehow automatically ambiguous is not one that the Montana Supreme Court has adopted. It's true that in Pablo they found that language to be ambiguous. But later that same year in the Brabeck case, they found it not to be ambiguous. The same language. And, as a matter of fact, it was a closer situation than this because it dealt with automobile insurance exclusions. But in answer to Judge Pye's question about whether or not this privacy action directly arises from, you seem to say that, yes, it's directly as opposed to indirectly. Granted, it may be on the same facts, which may then could arguably say directly from. But I view the statutory claim and the privacy action claim separately, and one appears that privacy action appear to be indirect. Well, Your Honor, I did not mean actually. And I don't mean to mince words on this, but it seems that the cases do. The distinction between the language that says simply arising out of, arising directly, or indirectly out of. And I'm not certain if I'm making my point clear for you, but there seems to be a fine distinction by the case law on this. Well, I want to make sure that I haven't misspoken, and perhaps I have, Judge LaMelle. I'm not making a distinction in answer to Judge Pye's question between directly and indirectly. I'm not suggesting that there's… You're looking at the action. I'm looking at what's underneath, right? Okay. What caused it? What did it arise out of, whether directly or indirectly? The factual scenario. Right, the factual scenario. We need to look at the corpus of relevant facts that are supporting the cause of action, whatever it's called, because that's what the exclusion looks to. The exclusion asks, what are the facts? And if the facts support an allegation of an ECPA violation, then no matter what the cause of action is called, it falls within the exclusion. So I gather if we agree with your assessment or just your argument that you advanced right there, it doesn't make any difference whether the Wyoming Supreme Court subsequently decides that they will recognize a right of privacy claim. Not for the purposes of the question of whether the exclusion applies to it or not. No, it doesn't. Okay. It doesn't. Let me turn to, in the alternative, this City of Bozeman question. If for some reason you did not agree with us that the common law claims likewise fell within the ambit of the exclusion, under their plain language and under the case law from the First and the Tenth Circuit, then you would need to decide whether the City of Bozeman rule applied in this case, whether there was a right to withdraw once things were winnowed down just to the ECPA claim. And first of all, I want to say that we're in a somewhat different procedural posture, to be sure, than the City of Bozeman case because in that case there was an appeal and here we're in the trial court. But it was the same underlying question that the City of Bozeman court was looking at, which is are there any covered claims left? If there are no covered claims left, well, then there was no duty to defend. And that's very clear and very consistent with Montana law outside of the City of Bozeman scenario. And we have cited a couple of cases in our briefs where Montana law is clear that if things change along the way and it becomes clear that a claim is not covered, there is a right to withdraw. And that makes perfect sense. Of course, what the policyholder pays for is the defense of covered claims. The policy, despite the fact that it's a mixed, sorry, I'm losing the phrase here, but a jurisdiction where you defend both covered and uncovered claims and there's no right to reimbursement, unlike California and the bus rule where there's a right to reimbursement later. Montana has a different rule. But despite that fact, all that the policyholder ever in fact bargains for and gets in the insurance contract as a right is the right to the defense of the covered claim. When they get a bonus of the defense of the uncovered claims when they're mixed together, mixed action rule, that's the phrase I was looking for, when they're mixed together. But when those covered claims disappear from the action and all that's left are uncovered claims, it makes no sense at all to say that there's an obligation to continue to provide a defense that was never bargained for when it's no longer even a mixed action. And that's consistent with what other States have found. Not all of them, of course. States come to different conclusions on this, but by no means is Montana an outlier on this. We cite a decision from the Southern District of Florida in our briefs that points out how particularly important this is in the federal context. And this is kind of turning 180 degrees from what counsel said a moment ago, not being able to take an interlocutory appeal in the federal system because of the general policy against interlocutory appeals. The Southern District of Florida said, well, by this reasoning, the insurer needs to provide a defense in actions that involve only uncovered claims always until final judgment because there's no ability to get an appeal earlier and get final resolution. That's not what the policyholder has bargained for. That's not what, in fact, the City of Bozeman and the similar Montana cases hold, and it's not what the other jurisdictions that we cite in our briefs have held either. But in any event, I would remind this Court, you need not reach the City of Bozeman rule if you conclude that the common law claims are within the ambit of the exclusion. The final point on that, there's a claim in the brief that this argument that the common law claims are within the ambit of the exclusion was not raised below. Hartford supplemental excerpts of record at 47 to 48 and 52 to 54 show you one place where it was raised very clearly below. Thank you, Your Honors. I cede the rest of my time. Thank you very much. Good morning, Your Honor. May it please the Court. My name is Matt Sitzer, and I'm here on behalf of the Liberty Mutual carriers. I'll use my initial time, subject to any questions Your Honor might have, to address Ms. Brockman's comments about the Washington action, which, as we recognize, involves the Liberty policies exclusively. As Your Honor, Judge Gould aptly noted immediately upon questioning, that complaint by its plain language does not encompass any sort of disclosure or transmission of information. Your Honor's zeroed in on the exact language highlighted by Aspenway and Ms. Brockman at ER 151, and it plainly... Well, it does say disclosure. It says disclosure in the... And aren't they entitled to, you know, to have the complaint interpreted in their favor? I think that when an allegation that is broken down into specific subparts describing the prefatory language uses only descriptive language encompassing collection of information, and the statute... Excuse me. Go ahead. Go ahead. And the statute that the claim is brought under only provides for a recovery based on collection of information. The Court... Why couldn't you read this to, just reasonably read it and infer that what they're talking about is defendant unfairly collected and disclosed private and confidential information, and the reference to disclosure is when they collected it at the shop, let's say, they disclosed it to their employees. Well, because the, as the court, the district court noted in its opinion, the disclosure is one that is required to go to third parties or the public at large. Well, why isn't an employee a third party in this context? In this context, I don't believe they would be. They would qualify as a third party, an employee, a representative of the... Of the company. Of the company. But all that notwithstanding, what the court, the district court did in its analysis of the Washington action is it simply concluded that the, that Aspen Way had failed to meet its burden of, the threshold burden of showing that there even is a third party in the case, a potential personal and advertising injury. The court didn't even need to get to the issue of the exclusion, which if it had, most certainly would have covered the Washington claim, which was a purely statutory complaint based on four Washington statutes, all involving, you know, the collection and even if there was disclosure or dissemination, squarely within the language of the exclusion. The court didn't even need to get to that and didn't because it held that Aspen had failed to meet its threshold burden of proving that there was even a, an advertising injury here. I'm going to reserve the rest of my time, as will Mr. Fryman, because I think that was basically the, we've, between the two of us, we've covered the issues that Ms. Brockman raised initially. If you're inclined to give her. Excuse me? Were you going to talk about reimbursement? I would prefer that Ms. Brockman make her argument and then I will. Well, let me just ask you. You're not quibbling with the, with the reimbursement amounts that the district court awarded? Certainly not the amounts. No, those were. That's what you asked for? That was what we proved. And you got what you asked for. And we asked for. Okay. Specifically. I just want to make sure. Yes. Yes. Okay. And I'll reserve the rest of my time to address anything, Mr. Bob. Thank you, your honors. I recognize that we are at time limits as it relates to potential new arguments. Your honor did raise the issue with regard to reimbursement. And so I'm wondering if the court would entertain some discussion with regard to that issue, which is a significant issue on appeal as well. Whatever way you want to handle it, counsel. I would like to address some significant flaws that we believe exist. We're giving you another two minutes. You were already over by more than a minute and a half. And we've got to stay near to our time limit. So. Thank you, your honor. I'll be as efficient as I can. First of all, there is no dispute that under Washington and Pennsylvania law, reimbursement of defense costs is not allowed. Those are the two locations that these actions were filed in. Those are the locations that my client will be subject to judgment and is, in fact, subject to judgment in. If the court applies Washington or Pennsylvania law, there's no question that reimbursement is not allowed. The district court did not consider that issue. But what the district court did consider was the issue of whether Montana law allows reimbursement. And I would submit that the two cases that the district court relied upon were improperly interpreted by the district court. Essentially, what the court did was try to find this bright line rule in Montana that does not, in fact, exist, based upon the Reby and the Horace Mann cases. The court didn't consider the facts of those cases, but instead just simply said that they hold the general proposition that when a claim is found not to be covered, an insurer is entitled to recoupment of defense costs. There are significant differences between those cases that the district court erred in not considering. First of all, as it relates to the Reby case, that case specifically involved an extra-contractual agreement between the insurer and the insured with regard to how defense costs would be handled. The two parties entered into an agreement that the insured would cover 50 percent of the defense costs and the insurer would cover 50 percent of the defense costs. That agreement was solely separate and distinct from what exists under the insurance policies. That is not what exists here. In this case, there is no such extra-contractual agreement. Additionally, in Reby, the insurer did pay half of the defense costs, again, completely different than what exists here. The court in Reby also did not, in any respect, take into account any analysis of the policy language versus what is reserved in a reservation of rights. Your time is up. Thank you. Please sum up in the next 30 seconds. We have to get this to a conclusion. Thank you, Your Honors. It's our submission that as it relates to both the exclusions and question of whether or not insurance coverage exists in this case, there are ambiguities with respect to the exclusions, and it is not conclusively established that coverage should not continue in these actions. In addition to that, Montana law is not clear that in the factual circumstances of this case, reimbursement of both defense and indemnity payments is required. Thank you. We ask that the district court be reversed. Thank you very much. Your Honors, addressing the recoupment, the reimbursement issue, of course Pennsylvania and Washington law, the applicability of those states' law was not argued below, was argued for the first time on appeal. With regard to Reby, this court six months ago acknowledged the Montana defense cost reimbursement right in its decision in attorney liability protective services versus Engelson Fitzgerald at 838 Fed Third 976. Reby very clearly and the later case in 2013, Horace Mann, were authored by the same judge on the Montana Supreme Court. They are Montana Supreme Court opinions. Reby set forth two requirements, and in the insurance context for recovery of defense costs expended on behalf of an insured for a claim that is eventually determined to be non-covered under the policy, stating that the insurer must timely and explicitly reserve rights to recoup, and that it provides specific and adequate notice to the insured of the possibility of reimbursement. Aspenway does not dispute that both of those requirements are met. Under the plain Supreme Court ruling in Montana, which is the governing case law that all parties argued and which the court held applies to the insurance issues, including the reimbursement issue, all defense costs that the court awarded were properly reimbursed upon the court's determination that coverage did not exist here. And we ask that the district court opinion be affirmed. Thank you, Your Honor. Thank you. Unless one of my colleagues has further questions for any counsel, I want to say thank you to all counsel, and this case shall be submitted, and the court will render its decision in due course. Appreciate all your help.
judges: Gould, Paez, Lemelle